UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ALEXANDER J. VIGLIANTE-BILPUH,

Plaintiff, Civil Action No. 1:26-cv-2165 (MAD/PJE)

-against-

CURALEAF HOLDINGS, INC., CURALEAF, INC., CURALEAF HOLDINGS, LLC, CURALEAF NY, LLC, and FOCUSED EMPLOYER INC.,

Defendants.
-------------------------------------------------------------------X

**COMPLAINT**

The Plaintiff, ALEXANDER J. VIGLIANTE-BILPUH (hereinafter "Plaintiff"), as and for his Complaint against the Defendants, CURALEAF HOLDINGS, INC., CURALEAF, INC., CURALEAF HOLDINGS, LLC, CURALEAF NY, LLC, and FOCUSED EMPLOYER INC. (hereinafter collectively "Curaleaf," the "Company," or "Defendants"), respectfully alleges as follows:

**JURISDICTION AND VENUE**

1. Plaintiff brings this action under the Fair Labor Standards Act (hereinafter the "FLSA"), 29 U.S.C. §§ 201 *et seq.*; the Family and Medical Leave Act (hereinafter the "FMLA"), 29 U.S.C. §§ 2601 *et seq.*; Articles 6 and 19 of the New York Labor Law (hereinafter the "NYLL"), and the supporting New York State Department of Labor Regulations of the Official Compilation of Codes, Rules, and Regulations of the State of New York promulgated by the Commissioner of Labor pursuant to the Minimum Wage Act including Parts 142 and 146 of Title 12 (hereinafter "Regulations"); and Section 740 of the New York Labor Law, to recover unpaid overtime

compensation, damages for interference with and retaliation for the exercise of FMLA rights, damages for unlawful retaliation for protected whistleblower activity, and for other relief.

2. Jurisdiction over Plaintiff's FLSA claims is based upon Section 216(b) of the FLSA, 29 U.S.C. § 216(b), and upon 28 U.S.C. § 1331.

3. Jurisdiction over Plaintiff's FMLA claims is based upon 29 U.S.C. § 2617 and upon 28 U.S.C. § 1331.

4. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims are so related to the federal claims that they form part of the same case or controversy.

5. Venue is appropriate in the Northern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this judicial District.

**PARTIES**

6. Plaintiff is an adult individual who is a resident of Rensselaer, New York.

7. Plaintiff was employed by Defendants at their cannabis production facility in Ravena, New York from on or about May 4, 2021 through December 4, 2025, most recently under their job title of "Kitchen Supervisor".

8. Plaintiff is a covered employee within the meaning of the FLSA, the FMLA, and the NYLL.

9. Upon information and belief, Defendant Curaleaf Holdings, Inc, is a corporation that owns and operates cannabis production and dispensing operations, including the Ravena, New York production facility at which Plaintiff was employed.

10. Upon information and belief, Defendant Curaleaf, Inc., is a corporation that owns and operates cannabis production and dispensing operations, including the Ravena, New York production facility at which Plaintiff was employed.

11. Upon information and belief, Defendant Curaleaf Holdings, LLC, is a limited liability company that owns and operates cannabis production and dispensing operations, including the Ravena, New York production facility at which Plaintiff was employed.

12. Upon information and belief, Defendant Curaleaf NY, LLC, is a limited liability company that owns and operates cannabis production and dispensing operations in the State of New York, including the Ravena, New York production facility at which Plaintiff was employed.

13. Upon information and belief, Defendant Focused Employer Inc. is an entity that, at all relevant times, functioned as an employer, co-employer, and/or joint employer of Plaintiff, including for payroll and human resources purposes.

14. At all relevant times, Defendants jointly employed Plaintiff and maintained control, oversight, and direction over Plaintiff, including hiring, firing, scheduling, timekeeping, payroll, controlling work assignments, and controlling other employment practices applied to him.

15. At all relevant times, Defendants had substantial control over Plaintiff's working conditions and over the unlawful policies and practices applied to him.

16. At all relevant times, Defendants devised, directed, implemented, controlled, and supervised the wage-and-hour practices and policies relating to Plaintiff.

17. Defendants are covered employers within the meaning of the FLSA, the FMLA, and the NYLL.

# FACTS

**Wage Violations (FLSA and NYLL):**

18. Plaintiff began his employment with Defendants at their Ravena, New York cannabis production facility on or about May 4, 2021, initially working as a unionized production employee under Local 338.

19. In July 2023, Plaintiff was promoted to the position of Kitchen Supervisor, with the purported responsibility for overseeing cannabis edible production operations.

20. At the time of his promotion, Defendants classified Plaintiff as an exempt, salaried employee and began paying him a fixed annual salary without overtime compensation.

21. Throughout his tenure as Kitchen Supervisor, Plaintiff was paid a flat salary regardless of the actual number of hours he worked each week or pay period, and he never received any overtime compensation despite routinely working well in excess of forty (40) hours per week.

22. Although nominally designated as Kitchen Supervisor, Plaintiff initially supervised approximately four production workers in the kitchen. After Plaintiff complained and prepared a memorandum regarding the reformulation of expired product, Defendants pulled him from the kitchen and required him to supervise additional departments, including flower product labeling and radiation, without any increase in pay or change in title. In that expanded role, Plaintiff oversaw approximately ten to twelve employees. Plaintiff nevertheless exercised no meaningful discretion or independent judgment over personnel decisions, operational policies, or business strategy.

23. All hiring, discipline, and termination decisions were controlled exclusively by Defendants' Human Resources and Talent Management departments and were subject to the collective bargaining agreement governing unionized production employees. Plaintiff's

recommendations, if heard at all, were purely advisory and carried no weight in actual employment decisions.

24. Plaintiff exercised no meaningful control over scheduling, pay rates, or promotions of other employees.

25. Most importantly approximately ninety percent (90%) of Plaintiff's work week consisted of manual, non-exempt production tasks performed directly on the manufacturing floor.

26. Plaintiff's daily responsibilities included creating production schedules and day-to-day work plans from demand metrics, completed lots, post-harvest production information, and production direction supplied by management; checking inventory against assigned production demand; submitting ingredient order requests for management approval; physically retrieving, lifting, and transporting raw ingredients, blank label rolls, packed goods, unradiated flower totes, radiation tubes, and finished products throughout the facility; weighing and staging ingredients and cannabis products; cleaning, sanitizing, and preparing molds and work surfaces; preparing and cooking cannabis-infused gummy batches in industrial kettles; transporting hot gummy syrup to the depositor; operating depositing, labeling, and radiation machinery; popping and sugaring finished gummies; hand-packing and unpacking radiation tubes; tracking container weights and completed quantities; creating and printing product labels from pre-approved templates supplied by corporate and approved by compliance; completing batch production records and quality control documentation; verifying physical documentation; updating trackers and data sheets; labeling finished products; performing duties related to flower product labeling and radiation; and performing heavy physical labor, including regularly lifting containers weighing between twenty-five (25) and three hundred sixty (360) pounds, such as 360-pound containers of liquid sugar

required for kettle batches and multiple five-gallon buckets weighing approximately twenty-five (25) pounds each.

27. These tasks were not ancillary or incidental to managerial duties; they constituted the overwhelming majority of Plaintiff's working hours and were identical to the manual production work performed by the unionized, non-exempt Production Technicians with whom he worked.

28. Plaintiff's daily tasks were governed by rigid, detailed standard operating procedures and regulatory compliance checklists mandated by New York State cannabis regulations and Good Manufacturing Practice (GMP) standards, rather than the exercise of discretionary managerial judgment regarding matters of significance to Defendants' business operations.

29. Throughout his tenure as Kitchen Supervisor, Plaintiff routinely worked between sixty (60) to seventy (70) hours per week to meet Defendants' production demands.

30. Defendants, on numerous occasions, imposed mandatory overtime requirements on production staff, including supervisors, to achieve production targets and meet regulatory audit preparation deadlines. For example, in November 2023, all production staff were required to work mandatory ten (10) hour shifts for multiple consecutive weeks to support the adult-use cannabis launch in New York. Defendants also conducted quarterly audits, and overtime was regularly mandatory for the week leading into each audit, including weekends. On audit days, supervisors were required to remain at the facility as physical counters until the audit was completed, which regularly lasted approximately fifteen (15) to twenty-two (22) hours, and they were then expected to report to work at their normal 7:00 a.m. start time the next day. Relevant audit dates included

March 29, 2024, June 28, 2024, September 20, 2024, January 2, 2025, March 30, 2025, June 30, 2025, and September 30, 2025.

31. Throughout these periods of intensive production demands, Plaintiff worked extensive overtime hours without receiving any additional compensation beyond his flat salary.

32. Plaintiff's paystubs consistently reflected a standard salary payment with no overtime premium, and Defendants maintained no time records documenting his actual hours worked despite the mandatory overtime requirements and his routine work schedule far exceeding forty (40) hours per week.

33. At no point during his employment did Plaintiff perform any jobs or exercise any duties that would classify him as exempt from overtime under the FLSA or the NYLL.

34. However, Defendants consistently failed to pay Plaintiff overtime wages for hours worked beyond forty (40) in a week, despite Plaintiff consistently working well in excess of forty (40) hours weekly.

35. Throughout Plaintiff's employment, Defendants failed to maintain accurate records of Plaintiff's hours worked.

36. During his employment, Plaintiff's paystubs did not accurately reflect the number of hours he actually worked and instead listed him as working forty (40) hours each week regardless of the number of hours he actually worked.

37. Accordingly, Defendants failed to provide Plaintiff with proper wage statements as required by NYLL § 195(3).

38. Defendants also did not provide Plaintiff with a wage notice at his time of hire or at any time thereafter.

39. Accordingly, Defendants failed to provide Plaintiff with proper wage notices as required by NYLL § 195(1).

40. Defendants' failures to pay proper wages and maintain required records have been made without good faith, willfully, and with a reckless disregard for Plaintiff's rights, and Plaintiff has been damaged by such failures.

41. Throughout the relevant period, Defendants knew or should have known that their failure to pay Plaintiff his proper overtime wages violated the FLSA and NYLL.

42. Throughout the relevant period, Defendants knew or should have known that their misclassification of Plaintiff as an exempt employee violated the FLSA and NYLL.

43. Throughout the relevant period, Defendants knew or should have known that their failure to maintain proper records violated the FLSA and NYLL.

44. Throughout the relevant period, Defendants knew or should have known that their failure to provide proper wage notices and statements violated the NYLL.

45. Defendants' violations of the FLSA and NYLL have been willful, deliberate, and intentional, and not the result of any good faith belief that their conduct was in compliance with the law.

***FMLA Leave, Interference, and Retaliation:***

46. At all relevant times, Defendants were engaged in commerce or in an industry affecting commerce and employed fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year, and were therefore covered employers within the meaning of the FMLA, 29 U.S.C. § 2611(4).

47. At all relevant times, Plaintiff was an eligible employee within the meaning of the FMLA, 29 U.S.C. § 2611(2), in that he had been employed by Defendants for at least twelve (12)

months, had worked at least 1,250 hours during the twelve (12) month period immediately preceding his leave, and was employed at a worksite where Defendants employed fifty (50) or more employees within seventy-five (75) miles.

48. As a result of the intolerable working conditions to which he was subjected, Plaintiff suffered a serious health condition and, beginning on or about October 7, 2025, was unable to work.

49. On or about October 17, 2025, Plaintiff, through counsel, sent a letter to Defendants alleging the above-described conduct, including unlawful whistleblower retaliation under NYLL § 740, unlawful wage practices and Defendants on notice of Plaintiff's claims.

50. Plaintiff's treating physician documented that Plaintiff was absent from work due to a work-related stress condition and excused him from work.

51. Plaintiff requested leave under the FMLA, and his request was administered through Defendants' third-party leave administrator.

52. By a determination dated on or about October 27, 2025, Defendants' leave administrator approved Plaintiff's continuous FMLA leave for the periods of October 7, 2025 through October 15, 2025 and October 16, 2025 through November 14, 2025.

53. During Plaintiff's FMLA leave, Defendants failed to apply Plaintiff's accrued and available paid time off, including sick time and vacation time to his leave, despite Defendants' practice and policy of applying such accrued paid leave during medical leave.

54. Defendants did so in retaliation for Plaintiff seeking protected leave under the FMLA.

55. As a result, Plaintiff was not paid for a workweek during his FMLA leave even though he had accrued and had available paid sick time and vacation time at the time.

56. Defendants further interfered with Plaintiff's exercise of his FMLA rights by initially denying his request to extend his leave notwithstanding that the certification deadline had not yet passed.

57. While Plaintiff was out on FMLA leave and unable to defend himself, Defendants commenced an internal investigation into Plaintiff for no purpose other than to retaliate against Plaintiff for his protected activities.

58. Plaintiff returned from FMLA leave on or about November 14, 2025.

59. Upon Plaintiff's return, Defendants subjected him to a hostile work environment and heightened scrutiny, including micromanagement by a newly hired Production Manager who had been placed into a position for which Plaintiff had applied and been denied consideration during his FMLA leave. That denial of that job application was due to retaliation Plaintiff was otherwise qualified and the most experienced candidate.

60. On or about the day after his return, the newly out of state hired Production Manager began questioning Plaintiff's operations, altering the layout and operation of the kitchen he oversaw, and treating him in a manner designed to undermine him, despite the fact that Plaintiff's department was not the source of any production issue.

61. Shortly after his return, Plaintiff's supervisor singled him out among the production supervisors and directed him to work on a day for which all of the production supervisors had requested and been approved for paid time off, threatening him with discipline if he did not comply.

62. Defendants' adverse treatment of Plaintiff following his FMLA leave was in retaliation for his exercise of his rights under the FMLA and constituted interference with those rights.

63. Defendants' actions were taken with a reckless disregard for Plaintiff's rights under the FMLA.

64. As a result of Defendants' unlawful conduct, Plaintiff was caused to suffer significant damages, including but not limited to lost wages, lost benefits, severe emotional distress, and substantial financial loss.

***<u>Whistleblower Activity and Retaliation (NYLL § 740):</u>***

65. Beginning in or about November 2024, production employees, including Plaintiff, were repeatedly directed by senior operations management to engage in conduct that Plaintiff reasonably believed violated New York State food safety laws and cannabis manufacturing regulations and posed a substantial and specific danger to public health and safety.

66. Specifically, Plaintiff and other employees were instructed to open sealed packages of expired cannabis gummy products, melt them down, and repackage them as new products with reassigned batch numbers and expiration dates for resale to consumers.

67. The stated purpose of this directive was to rework or destroy all failed and expired batches before the end-of-year inventory audit so that the products would not have to be counted in the audit.

68. When Plaintiff questioned the safety and legality of these directives in November 2024, he was told that the instructions came directly from senior leadership and that he was to comply.

69. During the reformulation process, Plaintiff and several other employees observed visibly moldy gummies among the products they were ordered to reformulate. These concerns were raised directly to production leadership, but Plaintiff and the team were instructed to continue

with the reformulation of the contaminated products, which Defendants then assigned new expiration dates and ultimately sold to consumers.

70. On or about July 7, 2025, the production teams were again directed to reprocess expired edible products. Plaintiff received an email requesting the rework of all expired edibles, which explicitly stated that the business motive was to avoid counting these lots in the upcoming quarterly inventory audit.

71. Plaintiff was told that this directive again came from senior operations leadership.

72. Plaintiff initially refused to perform the reprocessing of expired product and, when told the direction came from senior leadership, undertook to prepare a written compliance memorandum and to involve Defendants' compliance department before proceeding.

73. On or about July 8, 2025, Plaintiff escalated his concerns by sharing a written memorandum addressing the legal prohibitions on reprocessing expired food products with Defendants' Senior Manager of Compliance and other personnel. Plaintiff's memorandum identified the applicable provisions of the New York Agriculture and Markets Law prohibiting the manufacture, sale, or offering for sale of food that is adulterated or misbranded, and concluded that the reprocessing of expired product was not authorized by Defendants' existing rework procedures.

74. Defendants' compliance department reviewed the concerns Plaintiff raised, concluded that the proposed reprocessing was high-risk from a compliance perspective, and stated its intent to request guidance from the New York State Office of Cannabis Management on a compliant path forward.

75. Plaintiff escalated his concerns to Defendants' compliance personnel and to senior operations leadership, including Defendants' Executive Vice President of Operations and Supply Chain.

76. The plan to reprocess the expired product was thereafter abandoned when compliance stated it would reach out to the State regarding the directive.

77. During his employment, Plaintiff also became aware of and reported other issues, including pressure placed on third-party laboratories and the backdating and falsification of records.

78. In or about September 2025, Plaintiff was directed to pull data from an inventory management system for the purposes of an audit, despite the fact that an actual physical count was supposed to be conducted for those purposes. When Plaintiff noted a possible discrepancy between the data he was told to pull and the physical inventory, management blamed him for the problem.

79. On or about September 18, 2025, Plaintiff's father-in-law died. Plaintiff was involved in planning and paying for the funeral, along with his wife and sister-in-law. Plaintiff received three days of bereavement leave and requested additional time off using his accrued PTO to assist with funeral planning and attend the wake and funeral. Defendants denied Plaintiff's PTO request, citing the absence of two weeks' advance notice and the upcoming September 30, 2025 audit, even though Defendants were aware Plaintiff's father-in-law had been sick and that Plaintiff would need to use PTO around that time.

80. During the September 30, 2025 audit, Operations Manager Corey repeatedly blamed Plaintiff and another supervisor, Seamus, for the audit's poor performance, stating words to the effect that their names were "all over this" and that they were the reason employees would be there all night. When Regional Manager Dennis asked Plaintiff why he appeared upset, Plaintiff

complained that Corey was unfairly blaming him while Corey was also involved in the same issues. Later that evening, Corey cornered Plaintiff in the flower packaging room, accused Plaintiff of throwing him "under the bus" to Dennis, blamed Plaintiff for the audit's poor performance, and aggressively questioned Plaintiff's role by stating, in substance, that if Corey had to show Plaintiff how to manage his team, there was no point in Plaintiff being there.

81. After the September 30, 2025 audit, Corey advised the supervisors that one supervisor needed to switch from the 7:00 a.m. to 3:00 p.m. shift to the 3:30 p.m. to 12:00 a.m. night shift. Corey first asked for a volunteer. When no supervisor volunteered, Plaintiff was selected the next day despite advising Defendants that he had transportation issues because he and his wife shared one vehicle and that he needed to be with family following the recent death in his family. Human Resources and Dennis told Plaintiff that he did not have the option to refuse the shift change, implying that refusal would result in termination. Other supervisors, including Seamus and Phil, also cited personal reasons for being unable to accept the shift change, but they later told Plaintiff they had not been told they could not refuse the shift change. Phil later asked Corey why Plaintiff had been singled out and forced onto the night shift, and Corey stated that he thought Plaintiff would volunteer and, when Plaintiff did not, they put him on the shift anyway.

82. Plaintiff's disclosures, objections, and refusals to participate in the foregoing activities were protected activity under NYLL § 740 because Plaintiff reasonably believed the activities were in violation of law and presented a substantial and specific danger to public health and safety, including the sale of adulterated, contaminated, and misbranded cannabis edible products to unknowing consumers.

83. As a result of Plaintiff's protected activity, Defendants subjected him to a sustained pattern of adverse employment actions and retaliation.

84. Plaintiff applied for and was passed over for promotion to Operations Manager despite being highly qualified for the position. Instead, the position was awarded to a candidate who did not meet Defendants' own eligibility requirements regarding transfers and promotions.

85. Plaintiff also applied for a Production Manager position on or about October 5, 2025 but received no response from Defendants, and the position was awarded to an out-of-state transfer candidate while Plaintiff was on FMLA leave.

86. With each successive complaint, Plaintiff was subjected to increased scrutiny, unwarranted criticism, and reprimands for issues that were directly and solely attributable to management directives. This included Corey blaming Plaintiff for audit-related issues on September 30, 2025, confronting Plaintiff after Plaintiff raised concerns to Dennis, and then selecting Plaintiff for an involuntary night-shift assignment after no supervisor volunteered, despite Plaintiff's stated transportation and family-related hardships.

87. On or about October 17, 2025, Plaintiff, through counsel, sent a letter to Defendants alleging the above-described conduct, including unlawful whistleblower retaliation under NYLL § 740, and placing Defendants on notice of Plaintiff's claims.

88. As discussed earlier herein, Plaintiff was out of work on protected FMLA leave for approximately five weeks in October and November 2025. Plaintiff returned from FMLA leave on or about November 14, 2025.

89. On or about December 2, 2025, Plaintiff submitted a formal complaint to Defendants' Human Resources department regarding harassment and hostile treatment to which he was being subjected upon his return to work. Plaintiff also informed Defendant that he was told by his physician that if the stressful conditions at his employment did not resolve he should consider trying to find new employment as he was endangering his health by remaining in the

environment. Plaintiff hoped that his complaint and his informing the Defendant what his physician cautioned would result in the Defendant taking action to eliminate the retaliatory and harassing conduct.

90. Rather than address Plaintiff's formal complaint, on or about December 4, 2025, Defendants called Plaintiff into a meeting with senior leadership, accused him falsely and without any basis in evidence of tampering with equipment, told him it was his last day, and escorted him off the premises.

91. Plaintiff had received "exceeds expectations" ratings on his prior performance reviews and had no legitimate history of discipline that would justify Defendants' conduct. Defendants' own Human Resources manager was shocked at the events and told Plaintiff as he walked him out of the building that he did not expect this to happen.

92. Following the meeting, Defendants issued a separation notice listing Plaintiff's separation date as December 9, 2025, even though Plaintiff had been told in the termination meeting that he would be paid through December 16, 2025, and Plaintiff was in fact only paid through December 9, 2025.

93. The temporal proximity between Plaintiff's protected activities under the NYLL and the FMLA and the adverse employment actions taken against him, combined with Defendants' knowledge of his protected activity, establishes a clear pattern of unlawful retaliation. That pattern included expanding Plaintiff's duties without increased pay or title after his complaint and memorandum regarding expired product, blaming him for audit-related issues, forcing him into a night-shift assignment shortly after the September 30, 2025 audit, subjecting him to heightened scrutiny after his protected leave, and terminating his employment on December 4, 2025.

94. Plaintiff acted in good faith to report serious regulatory violations, consumer safety hazards, and public health risks.

95. Defendants' retaliatory actions were done with malice and with a reckless disregard for Plaintiff's rights.

96. As a result of Defendants' retaliatory actions, Plaintiff was caused to suffer significant damages, including but not limited to lost wages, lost promotional opportunities, severe emotional distress, and substantial financial loss.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 201 *ET SEQ*.**
**FAILURE TO PAY OVERTIME WAGES**

97. Plaintiff alleges, re-alleges, and incorporates by reference all allegations set forth in each of the preceding paragraphs as though fully set forth herein.

98. At all times relevant to this Complaint, each of the Defendants has been and continues to be an "employer" within the meaning of the FLSA (29 U.S.C. § 207(a)(2)).

99. At all times relevant to this Complaint, Defendants "employed" Plaintiff by suffering or permitting him to work within the meaning of the FLSA (29 U.S.C. § 203(g)).

100. The FLSA regulates the payment of wages by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce, or are employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1).

101. At all times relevant to this Complaint, Defendants had more than two (2) employees employed in an enterprise engaged in commerce.

102. At all times relevant to this Complaint, Defendants constituted an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the

FLSA (29 U.S.C. § 203(s)). As such, Defendants were and are subject to the overtime pay requirements of the FLSA.

103. Upon information and belief, the gross annual volume of business done by Defendants for the relevant time period was not less than $500,000.00.

104. At all times relevant to this action, Plaintiff was entitled to the rights, benefits, and protections granted by the FLSA, 29 U.S.C. §§ 207, *et seq*.

105. Section 207(a)(1) of the FLSA states that an employee must be paid overtime, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week.

106. By the above-alleged conduct, Defendants have violated the FLSA by failing to pay Plaintiff overtime compensation for all hours worked in excess of forty (40) per week as required by the FLSA.

107. Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from the overtime compensation requirements set forth in Section 207(a)(1) of the FLSA.

108. However, none of the Section 13 exemptions apply to Plaintiff because he has not met the requirements for coverage under the exemptions.

109. Defendants have acted willfully and have either known that their conduct violated the FLSA or have shown reckless disregard for the matter of whether their conduct violated the FLSA.

110. Defendants have not acted in good faith with respect to the conduct alleged herein.

111. As a result of Defendants' violations of the FLSA, Plaintiff has incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees, and costs of litigation pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**VIOLATION OF THE NEW YORK LABOR LAW**
**ARTICLES 6 AND 19**
**FAILURE TO COMPENSATE FOR OVERTIME**

112. Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

113. At all times relevant to this Action, Plaintiff was employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

114. At all times relevant to this Action, Defendants were "employers" of Plaintiff within the meaning of the NYLL and the supporting Regulations pertaining thereto.

115. At all times relevant to this Action, Plaintiff was an "employee" of Defendants within the meaning of the NYLL and the supporting Regulations pertaining thereto.

116. At all times relevant to this Action, Defendants employed Plaintiff, suffering or permitting him to work within the meaning of the NYLL and the supporting Regulations pertaining thereto.

117. The overtime wage provisions of Article 19 of the NYLL and its supporting Regulations apply to Defendants and protect Plaintiff.

118. Under New York law, an employee must be paid overtime, equal to one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week in the manner and methods provided by the FLSA. 12 N.Y.C.R.R. § 146-1.4.

119. By the above-alleged conduct, Defendants failed to pay Plaintiff overtime compensation for the time periods in which he worked in excess of forty (40) hours per week as required by the NYLL and the Regulations pertaining thereto.

120. Plaintiff was not exempt from the overtime provisions of the NYLL because he did not meet the requirements for any of the reduced number of exemptions available thereunder.

121. At all times relevant to the Complaint, Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff.

122. Defendants have acted willfully and have either known that their conduct violated the NYLL or have shown a reckless disregard for the matter of whether their conduct violated the NYLL. Defendants have not acted in good faith with respect to the conduct alleged herein.

123. As a result of Defendants' violations of the NYLL, Plaintiff has incurred harm and loss in an amount to be determined at trial, in addition to liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**COUNT III**
**VIOLATION OF THE NEW YORK LABOR LAW**
**NYLL SECTION 195(1)**
**FAILURE TO PROVIDE WAGE NOTICES**

124. Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

125. Defendants willfully failed to furnish Plaintiff with wage notices during the entirety of his employment, including the date of his hiring, as required by NYLL § 195(1), in English or in the language identified by Plaintiff as his primary language, which were to contain, among other things, Plaintiff's rate or rates of pay and basis thereof; the regular pay day designated by Defendants as employers in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and Plaintiff's regular hourly rates of pay and overtime rates of pay.

126. Through their knowing and intentional failure to provide Plaintiff with the wage notices required by the NYLL, Defendants have willfully violated NYLL §§ 190 *et seq.* and the supporting Regulations.

127. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover statutory penalties of five thousand dollars ($5,000.00), together with costs and attorneys' fees provided by NYLL § 198(1-b).

**COUNT IV**
**VIOLATION OF THE NEW YORK LABOR LAW**
**NYLL SECTION 195(3)**
**FAILURE TO PROVIDE WAGE STATEMENTS**

128. Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

129. Defendants willfully failed to provide Plaintiff proper written wage statements with his wages each pay period as required by NYLL § 195(3), which were to include, among other things, the dates of work covered by each payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; deductions; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular hours worked and the number of overtime hours worked.

130. Through their knowing and intentional failure to provide Plaintiff with accurate wage statements required by the NYLL, Defendants have willfully violated NYLL §§ 190 *et seq*. and the supporting Regulations.

131. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover statutory penalties of five thousand dollars ($5,000.00), together with costs and attorneys' fees as provided by NYLL § 198(1-d).

**COUNT V**
**VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**
**29 U.S.C. § 2601 *ET SEQ*.**
**INTERFERENCE**

132. Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

133. At all relevant times, Defendants were covered employers within the meaning of the FMLA, 29 U.S.C. § 2611(4).

134. At all relevant times, Plaintiff was an eligible employee within the meaning of the FMLA, 29 U.S.C. § 2611(2).

135. Plaintiff was entitled to leave under the FMLA because of a serious health condition that made him unable to perform the functions of his position, 29 U.S.C. § 2612(a)(1)(D).

136. Plaintiff gave Defendants notice of his need for FMLA leave, and his leave was approved.

137. Defendants interfered with, restrained, and denied the exercise of Plaintiff's rights under the FMLA, including by failing to apply Plaintiff's accrued paid leave to his FMLA leave in accordance with Defendants' own practice and policy, failing to pay him for a workweek during his leave, initially denying his request to extend his leave before the certification deadline had passed, and subjecting him to an internal investigation while he was on leave.

138. Defendants' violations of the FMLA were willful and were not undertaken in good faith.

139. As a result of Defendants' violations of the FMLA, Plaintiff has incurred harm and loss in an amount to be determined at trial, including lost wages, salary, benefits, and other compensation, together with liquidated damages, interest, reasonable attorneys' fees, and costs pursuant to 29 U.S.C. § 2617.

**COUNT VI**
**VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**
**29 U.S.C. § 2601 *ET SEQ*.**
**RETALIATION**

140. Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

141. Plaintiff engaged in activity protected by the FMLA by requesting and taking FMLA leave.

142. Defendants retaliated against Plaintiff in violation of his rights secured by the FMLA for exercising his rights to FMLA-protected leave.

143. Following Plaintiff's exercise of his FMLA rights, Defendants subjected Plaintiff to adverse employment actions, including a hostile work environment, heightened scrutiny, denial of a promotion for which he had applied, involuntary assignment to less favorable working conditions, and ultimately termination.

144. There is a causal connection between Plaintiff's exercise of his FMLA rights and the adverse employment actions taken against him.

145. Defendants engaged in retaliation with malice and with reckless indifference to Plaintiff's right to be free from such illegal actions.

146. As a result of Defendants' violations of the FMLA, Plaintiff has incurred harm and loss in an amount to be determined at trial, including lost wages, salary, benefits, and other compensation, together with liquidated damages, interest, reasonable attorneys' fees, and costs pursuant to 29 U.S.C. § 2617.

**COUNT VII**
**VIOLATION OF THE NEW YORK LABOR LAW**
**NYLL SECTION 740**
**<u>RETALIATION FOR PROTECTED WHISTLEBLOWER ACTIVITY</u>**

147. Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

148. Plaintiff engaged in protected activity within the meaning of NYLL § 740 when he disclosed, threatened to disclose, objected to, and refused to participate in activities, policies, and practices of Defendants that he reasonably believed were in violation of law, rule, or regulation, and that he reasonably believed posed a substantial and specific danger to the public health or safety, including the reprocessing and sale of expired, adulterated, contaminated, and misbranded cannabis edible products to consumers.

149. Defendants were aware of Plaintiff's protected activity.

150. Defendants took retaliatory personnel actions against Plaintiff, including denial of promotions, increased scrutiny, unwarranted criticism and reprimands, involuntarily assigning him to the night shift despite his stated transportation and family-related hardships, creating a hostile work environment, and the termination of his employment, because of his protected activity.

151. There is a causal connection between Plaintiff's protected activity and the retaliatory personnel actions taken against him.

152. Defendants' retaliatory actions were done with malice and with a reckless disregard for Plaintiff's rights under the NYLL.

153. As a result of Defendants' violations of NYLL § 740, Plaintiff has incurred harm and loss in an amount to be determined at trial, and is entitled to all relief available under NYLL § 740, including back pay, front pay, compensation for lost wages and benefits, civil penalties, punitive damages, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, by and through his attorneys, demands judgment against Defendants, jointly and severally, and in favor of Plaintiff, for a sum that will properly, adequately, and completely compensate Plaintiff for the nature, extent, and duration of the damages, costs of this action, and as follows:

A. Declare and find that Defendants committed one or more of the following acts:

1. Violated the provisions of the FLSA by failing to pay overtime compensation to Plaintiff;
2. Willfully violated the overtime provisions of the FLSA;
3. Violated the provisions of the NYLL by failing to pay overtime compensation to Plaintiff;
4. Willfully violated the applicable provisions of the NYLL;
5. Violated the provisions of the NYLL by failing to provide Plaintiff with wage notices as required by NYLL § 195(1);
6. Violated the provisions of the NYLL by failing to provide Plaintiff with wage statements as required by NYLL § 195(3);
7. Violated the FMLA by interfering with, restraining, and denying Plaintiff's exercise of his rights under the FMLA;
8. Violated the FMLA by retaliating against Plaintiff for exercising his rights under the FMLA; and,
9. Violated the provisions of NYLL § 740 by retaliating against Plaintiff for his protected whistleblower activity;

B. Award compensatory damages, including all overtime compensation owed, in an amount according to proof;

C. Award back pay, front pay, prejudgment interest, lost fringe benefits, compensatory damages, including emotional distress damages, and punitive damages resulting from Defendants' retaliation and unlawful conduct;

D. Award liquidated damages under the FLSA, the NYLL, and the FMLA;

E. Award statutory damages and civil penalties under the NYLL;

F. Award interest as applicable on all overtime compensation from the date such amounts were due;

G. Award all costs and attorneys' fees incurred in prosecuting this action; and,

H. Award such other and further relief as this Court deems just and proper.

Dated: October 19, 2026
Albany, New York

**HARDING MAZZOTTI, LLP**

By: Kelly A. Magnuson
Kelly A. Magnuson, Esq.
*Attorneys for Plaintiff*
1 Wall Street
Albany, New York 12205
Tel.: (518) 862-1200
Email: Kelly.Magnuson@1800law1010.com